# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 03-1011

KATHY TUCKER

VERSUS

**SECURITY INDUSTRIAL INSURANCE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 01-01537
CHARLOTTE L. BUSHNELL, WORKERS COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Michael G. Sullivan, Judges.

**AFFIRMED.**

H. Douglas Hunter
Guglielmo, Lopez, Tuttle, Hunter & Jarrell, L.L.P.
Post Office Drawer 1329
Opelousas, LA 70571-1329
(337) 948-8201
COUNSEL FOR DEFENDANT/APPELLANT:
    Security Industrial Insurance

Erin M. Alley
Baggett, McCall, Burgess, Watson & Gaughan
Post Office Drawer 7820
Lake Charles, LA 70606-7820
(337) 478-8888
COUNSEL FOR PLAINTIFF/APPELLEE:
    Kathy Tucker

AMY, Judge.

In this workers' compensation matter, the employee filed a disputed claim, contesting the termination of her medical benefits. The workers' compensation judge determined that the employee-claimant did not meet the burden of proof of entitlement to such benefits. The written reasons for judgment submitted in the matter were not in conformity with the oral reasons as stated by the workers' compensation judge, and the employee-claimant moved for a new trial in order that the written judgment might be amended. The motion was granted, and the workers' compensation judge's new written ruling stated that the employee-claimant had sustained a work-related injury and was entitled to medical benefits but was not entitled to disability benefits. The employer filed the instant appeal. For the following reasons, we affirm.

**Factual and Procedural Background**

Kathy Tucker, the claimant herein, was employed as a debit agent by Security Industrial Insurance. One of a debit agent's duties, among other things, was to collect premiums from clients, which would often take place at clients' homes in the evenings. On or around August 25, 1998, Ms. Tucker was collecting a premium payment at the home of a client who owned what was described as a very mean, territorial poodle. The record reflects that the client knew that Ms. Tucker was afraid of the dog; as such, it was not allowed to come into the house while Ms. Tucker was there. Upon the conclusion of business on this particular occasion, the client heard a door close. According to her testimony at the disputed-claim hearing in the matter, the client was under the impression that Ms. Tucker had gone, so she let the dog into the house. However, Ms. Tucker testified that she had not yet left the house and that it was actually the client's husband who had closed a door. Ms. Tucker recalled that she became extremely frightened when she realized that the dog was indoors. She

testified that she turned and ran for her car, twisting something in the process. She noted that upon sitting in the driver's seat, she experienced a burning, stabbing pain in her back and buttocks.

Two weeks later, on September 8, 1998, Ms. Tucker visited her family physician, complaining of back pain. On September 12 or 13, 1998, Ms. Tucker first mentioned the incident to a secretary in Security Industrial's office and then to her supervisor, who instructed her to file a report with the district manager. The secretary testified at the disputed-claim hearing that company policy required that all accident reports were to be filed with the district manager immediately after the accident. Ms. Tucker reported the injury accordingly and ceased working for Security Industrial shortly thereafter. In April 1999, Ms. Tucker underwent back surgery, and in May 2002, surgery was performed on her neck.

Meanwhile, in November 2000, Ms. Tucker and her brother opened Pocket Money, a payday-loan business in Lake Charles. Ms. Tucker testified at the disputed-claim hearing that she did not manage or work in the business; although she would frequently remain at the store during operating hours at first, she would only write checks and pay the bills. Because of the severity of Ms. Tucker's persistent back pain and discomfort, her father brought a recliner for her to use while she was at the store, and Ms. Tucker testified that she spent most of her time sitting in the recliner, visiting with her employees.

Security Industrial paid Ms. Tucker's workers' compensation benefits from the time her injury was reported until February 1, 2001. The record indicates that the claims adjuster assigned to Ms. Tucker's case learned of Pocket Money's existence, and she initiated surveillance of Ms. Tucker's activities. Video surveillance tapes made on four consecutive days in January 2001 showed Ms. Tucker unlocking Pocket

2

Money's doors in the morning and locking them at night. The claims adjuster testified at the disputed-claim hearing that, in her opinion, the content of the tapes indicated that Ms. Tucker was able to work and that she had engaged in fraud for the purpose of obtaining workers' compensation benefits, a violation of La.R.S. 23:1208, noting that she had not reported any earnings for January 2001. The claims adjuster terminated Ms. Tucker's benefits accordingly.

Ms. Tucker filed a disputed claim against Security Industrial on March 6, 2001, contending that her benefits had been wrongfully terminated and that her recommended pain-management treatment had not been authorized. Security Industrial answered, arguing that Ms. Tucker did not sustain a work-related accident and that even if she had, she forfeited her right to such benefits when she did not claim income from working at Pocket Money and when she settled a third-party action without Security Industrial's written consent.

The matter proceeded to hearing on October 14, 2002. In her oral reasons for ruling, the workers' compensation judge concluded that the evidence presented was equally balanced in favor of both the claimant and the employer, and, consequently, Ms. Tucker did not meet the requisite burden of proving that her benefits were arbitrarily discontinued or that she was entitled to temporary or permanent disability benefits. The workers' compensation judge further noted that, although Ms. Tucker was present at Pocket Money, her actions did not rise to the level of fraud that would warrant termination of benefits pursuant to La.R.S. 23:1208. However, the record reflects that the written ruling submitted by the employer and signed by the workers' compensation judge on October 18, 2002, was not in conformity with the oral reasons issued in the matter. Instead, the written ruling states, *inter alia,* that Ms. Tucker did

3

not prove that she sustained a work-related accident and, therefore, was not entitled to benefits.

Ms. Tucker filed a motion for new trial, seeking an amendment of the workers' compensation judge's written ruling to accurately reflect the rationale stated in the oral reasons. In this motion, Ms. Tucker noted that the workers' compensation judge had not ruled that she did not suffer a work-related accident, as stated in the written ruling. The motion for new trial was granted on February 20, 2003. The workers' compensation judge issued new written reasons for judgment on April 3, 2003, which stated that Ms. Tucker had suffered a work-related accident but was not entitled to disability benefits.

The employer appeals, asserting that the workers' compensation judge erred in granting the employee's motion for new trial and in finding that the employee sustained a work-related accident.

## Discussion

Security Industrial's argument on appeal is best addressed as two separate parts: first, that the workers' compensation judge abused her discretion in granting Ms. Tucker's motion for new trial; and second, that the workers' compensation judge erred in determining that Ms. Tucker sustained a work-related accident. Accordingly, we examine these arguments in turn.

*Motion for New Trial*

Security Industrial contends on appeal that the workers' compensation judge abused her discretion in granting Ms. Tucker's motion for a new trial. It argues that the record supports the original judgment issued in this matter—namely, that Ms. Tucker failed to prove by a preponderance of the evidence that an at-work accident occurred.

4

If a written judgment does not conform to the oral reasons issued by a judge, there are three ways by which the error may be remedied: first, by a timely application for a new trial; second, by a petition for nullity; and third, by a timely appeal. *Francis v. Lafon Nursing Home of the Holy Family*, 02-1863 (La.App. 4 Cir. 3/19/03), 840 So.2d 1281, *writ denied*, 03-1373 (La. 9/19/03), 853 So.2d 643. In light of the vast discretion afforded trial courts in determining whether to grant a party's motion for new trial, appellate courts, in reviewing such determinations, will not disturb the trial court's actions absent an abuse of discretion. *Davis v. Wal-Mart Stores, Inc.*, 00-0445 (La. 11/28/00), 774 So.2d 84.

Upon examining the record, we find that the workers' compensation judge did not manifestly abuse her discretion in granting Ms. Tucker's motion for a new trial. The record indicates that the workers' compensation judge did not find that Ms. Tucker was not entitled to benefits due to the lack of proof of a work-related accident. Instead, the workers' compensation judge determined that Ms. Tucker did not prove those claims listed on her pre-trial statement, namely that her benefits were arbitrarily terminated and that she was entitled to disability benefits. The record likewise reflects that the written reasons for ruling submitted by Security Industrial and signed by the workers' compensation judge stated that Ms. Tucker did not sustain a work-related accident. This portion of the written reasons did not accurately reflect the workers' compensation judge's findings in the matter. Ms. Tucker properly sought to amend the ruling via a motion for new trial, which the workers' compensation judge properly granted for this purpose. This assignment lacks merit.

*Work-Related Accident*

Security Industrial further argues on appeal that the more than two-week delay between the date of the alleged accident and the date when Ms. Tucker reported it to

5

her district manager supports its contention that she did not sustain an on-the-job accident. In fact, Security Industrial asserts, this was an unwitnessed accident, and Ms. Tucker's claims were inconsistent with other witnesses' testimony regarding the alleged injury. Security Industrial points out that Ms. Tucker did not seek medical treatment until two weeks after the accident and that the workers' compensation judge found her testimony less than credible. In sum, it argues that the workers' compensation judge erred in determining that a work-related accident occurred.

Louisiana Revised Statutes 23:1021(1) defines an accident, in the context of workers' compensation litigation, as:

> an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.

In workers' compensation matters, the employee-claimant has the burden of proving that a work-related accident occurred by a preponderance of the evidence. *Darby v. Gilbert Richard, Inc.*, 02-1154 (La.App. 3 Cir. 2/5/03), 838 So.2d 141. With respect to the applicable evidentiary burden where an on-the-job accident is unwitnessed, a panel of this court noted in *Ware v. Allen Parish School Bd.*, 02-1011, p. 6 (La.App. 3 Cir. 5/21/03), 854 So.2d 374, 378, that:

> [t]he injured employee's testimony alone may be enough to meet the burden of proof as long as 1) no other evidence contradicts the employee's version of the accident, and 2) the testimony is corroborated by circumstances following the alleged incident. *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992). If the employee's testimony contains inconsistencies and discrepancies, then the injured employee's testimony alone will not be enough to prove his injury occurred on the job. *Harris v. General Motors*, 577 So.2d 1160 (La.App. 2 Cir. 1991).

(*quoting Sam v. Asplundh Tree Expert Co.*, 02-259, p. 2 (La.App. 3 Cir. 10/2/02), 827 So.2d 631, 633-34). Whether a work-related accident has occurred is a factual finding that will not be set aside on appeal in the absence of manifest error. *Pauley v. Wal-*

*Mart Stores, Inc.*, 02-1354 (La.App. 3 Cir. 6/4/03), 847 So.2d 757, *writ denied*, 03-1884 (La. 11/21/03) ___ So.2d ___.

The record establishes that there were no eyewitnesses to the accident and that the client who owned the poodle at the center of this matter was not in a position to witness the accident due to her location in the house. Because the alleged accident herein was unwitnessed, we consult the factors listed in *Ware*, 854 So.2d 374, above, in our examination of whether the record supports the workers' compensation judge's determination that an at-work accident occurred. First, several witnesses who had heard Ms. Tucker's account of the accident testified at the disputed-claim hearing, and each of these witnesses recalled that Ms. Tucker claimed that her injury resulted from running from a dog. Second, testimony elicited at trial established that Ms. Tucker had entered the client's transaction in her debit book as having occurred on August 25, 1998, and her co-workers testified that she complained of pain two weeks later. The record indicates that Ms. Tucker also sought medical treatment for her injuries and was referred to orthopedic surgeons and pain-management specialists for treatment. The record also reflects that Security Industrial paid medical benefits for Ms. Tucker shortly after the accident was reported until February 1, 2001, nearly two and one-half years later.

The record also indicates that Ms. Tucker sustained a severe injury. She testified at the disputed claim hearing that she is unable to work and that she cannot sit or stand for extended periods of time due to pain. Moreover, she indicated that as a result of her injury, she experienced lower back pain, leg pain, neck pain, and arm pain, as well as severe headaches. She noted that she had attended pain management therapy until her benefits were discontinued. Ms. Tucker testified that despite these surgeries, and despite the pain medication she takes, she still suffers from headaches,

7

neck pain, back pain, and foot and leg cramps. In fact, Ms. Tucker noted, she was scheduled to undergo two more surgeries after trial. In light of the above considerations, the record reflects that Ms. Tucker's testimony regarding the accident was not inconsistent and that her testimony alone was sufficient to prove the occurrence of a work-related injury.

Furthermore, in *Bruno v. Harbert International, Inc.*, 593 So.2d 357 (La.1992), the Louisiana Supreme Court addressed the timing of the filing of an accident report and its impact upon an employee's claim that an at-work injury occurred:

> As to plaintiff's delay in filing a formal accident report, we noted in *West* [*v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979)], that a worker's delay in reporting an injury "is more corroborative of her initial unawareness of the seriousness of the injury ... than it is any cause to doubt her credibility about its occurrence." *West*, 371 So.2d at 1150.

*Bruno*, 593 So.2d at 363. In *Bruno*, the supreme court commented that the principle outlined in *West*, 370 So.2d 1146, was "especially true when, as in the instant case, the delay is of a relatively short duration, only two weeks." *Id.* With respect to the delay in filing the accident report, we find that the two-and-a-half-week delay between the accident and the filing of the report in the instant matter on appeal does not render suspect Ms. Tucker's allegations regarding the occurrence of such an accident. Ms. Tucker testified at trial that she obtained medical attention of her own volition and paid for it herself. She also testified to the effect that her work schedule and her district manager's work schedule were at odds, making it difficult for her to get in contact with him. The delay in filing the accident report herein was reasonable and does not indicate that Ms. Tucker did not sustain a work-related accident. This assignment is without merit.

**DECREE**

8

For the foregoing reasons, the workers' compensation judge's ruling is affirmed. All costs of this proceeding are assigned to the defendant-appellant, Security Industrial.

**AFFIRMED.**