# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1355

**KENNETH DODGE**

**VERSUS**

**S & B LOGGING**

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 2
PARISH OF RAPIDES, NO. 02-1580
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

**OSWALD A. DECUIR**
**JUDGE**

**********

Court composed of Billie Colombaro Woodard, Oswald A. Decuir, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Joseph Texada Dalrymple**
**RIVERS, BECK, DALRYMPLE & LEDET**
**P. O. Drawer 12850**
**Alexandria, LA 71315-2850**
**(318) 445-6581**
**Counsel for Plaintiff/Appellant:**
  **Kenneth Dodge**

**Brian S. Lestage**
**HALL, LESTAGE & LANDRENEAU**
**P. O. Box 880**
**DeRidder, LA 70634**
**(337) 463-8692**
**Counsel for Defendant/Appellee:**
  **S & B Logging**

**DECUIR, Judge.**

Kenneth Dodge filed suit against his employer, S & B Logging, after workers' compensation benefits were terminated based on a release to return to work following knee surgery. Dodge appeals from the dismissal of his claim against S & B Logging. After reviewing the merits of Dodge's claim, we find no manifest error in the decision rendered by the workers' compensation judge and affirm.

Dodge was employed as a truck driver for S & B Logging. He hauled pulpwood, driving an eighteen-wheeler with a thirteen speed transmission. It was a heavy manual labor job, involving lifting, loading, climbing, and using a chain saw, and Dodge had been at this job for many years. Dodge was a heavy man, weighing approximately 450 pounds in August of 2001, when he first developed symptoms of the knee problem which is at issue herein. The problem began as a small callous on the side of his left knee, located at the spot where his knee rubbed against the door of the truck. On August 9, he noticed his knee was red, swollen, and tender, and he had trouble walking. Dodge went to his family practitioner, Dr. L. J. Mayeux, who immediately sent him to the emergency room at St. Francis Cabrini Hospital in Alexandria.

Dodge was diagnosed with prepatellar suppurative bursitis of the left knee, an infectious process which put Dodge at risk of losing his leg. After drainage and antibiotic therapy failed to correct the problem, Dr. Terry Texada, an orthopedic surgeon, was called in for surgery. The surgery was performed on August 11, and Dr. Texada considered it successful. In fact, he instructed Dodge on September 6 to get back in his truck and try to start working the pedals. Dr. Texada saw Dodge for the last time in January of 2002 and advised him to return to work. Consequently, Dodge's workers' compensation benefits, which had been paid at the maximum rate since August 7, 2001, were terminated on February 7, 2002.

In the meantime, however, Dodge continued to see Dr. Mayeux after his surgery and, in October 2001, was diagnosed with severe arthritis in the knees. Dr. Mayeux's notes indicate that Dodge's left knee remained tender and swollen, with decreased range of motion, throughout 2001 and 2002. The last office note, dated January 20, 2003, shows the same symptoms, with Dodge still on "no-work status." His weight, which Dr. Mayeux had recorded at 455.4 pounds on August 9, 2001, was unmeasurable, meaning over 470 pounds, as of November 20, 2001.

Dr. Texada attributed Dodge's continuing problems with his knee to excess weight and degenerative arthritis. He specifically noted those problems were unrelated to the septic bursitis which developed at the site of the calloused knee. Dr. Texada felt the bursitis had healed completely after surgery. Conversely, Dr. Mayeux considered the arthritic condition to have been aggravated or set into motion by the surgery necessitated by the work-related bursitis. Similarly, Dodge's weight concerns were exacerbated by the period of inactivity following surgery and his inability to get back to an active work environment. Dr. Mayeux felt Dodge's disability was directly related to his employment injury.

In this appeal, Dodge contends the workers' compensation judge erred in several respects. He first contends the court misinterpreted the medical testimony and, therefore, made incorrect conclusions as to Dodge's condition. He also argues the court placed improper reliance on the testimony of Dr. Texada, who was only a consulting physician in the case and did not conduct orthopedic examinations on Dodge's knee subsequent to performing surgery to relieve the bursitis. He also asserts the court erred in failing to apply the presumption of causation articulated in *Housley v. Cerise,* 579 So.2d 973, 980 (La.1991) (*quoting Lukas v. Ins. Co. of N. Am.,* 342 So.2d 591 (La.1977)), wherein the supreme court stated:

3

> [A] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.

In addressing this presumption, however, this court has stated, "If the evidence leaves the probabilities of causation equally balanced, the claimant has failed to carry her burden of proof." *Courville v. Premier Abrasive Prod.,* 01-840, p.3 (La.App. 3 Cir. 12/12/01), 801 So2d 598, 601.

Our review of the medical evidence does show some degree of misunderstanding on the part of the workers' compensation judge. He stated in oral reasons that he found no evidence of a job-related incident which would have caused an opening in the skin necessary for the septic bursitis to develop. He also noted the medical evidence did not support Dr. Mayeux's opinion that the knee remained infected after surgery or that scarring and adhesions from the surgery caused further problems. As Dodge asserts, the evidence did not indicate that an opening in the skin was necessary for the bursitis to develop, nor did the records of Dr. Mayeux support the statement that he thought an infection and adhesions remained. Nevertheless, these unsupported findings were immaterial to the resolution of the case, which presented the question of whether Dodge was entitled to benefits after Dr. Texada specifically released him to return to work in late January. Dodge received workers' compensation benefits from the time of his surgery until February of 2002.

We find no merit to Dodge's remaining contentions that the workers' compensation judge improperly relied on the testimony of Dr. Texada and failed to apply the appropriate presumption of causation. The court weighed the evidence and concluded that Dodge had failed to carry his burden of proof on the medical question

4

of causation concerning the persistent disabling symptoms subsequent to January 2002. Our review of the record reveals no manifest error in that conclusion.

For the foregoing reasons, the judgment of the workers' compensation judge is affirmed. Costs of the appeal are assessed to appellant, Kenneth Dodge.

**AFFIRMED.**